KINGS COUNTY.—HON. W. L. LIVINGSTON, SUR-
ROGATE.—November, 1882 ; again, HON. JACOB
I. BERGEN, SURROGATE.—January, 1883.

## CROSSMAN v. CROSSMAN.

*In the matter of the probate of the will of* HENRY
CROSSMAN, *deceased.*

Where a will is executed in duplicate, it is unnecessary that each duplicate
be admitted to probate and recorded. The will is single ; the evidence
thereof, double.

Upon the application for probate of a will which had been executed in
duplicate, proponents produced and proved only one of the dupli-
cates, making no mention, in their petition, of the existence of
another, or of the fact of double execution. A petition for revocation
having been filed under Code Civ. Pro., § 2647, and the existence of
a duplicate having been shown, proponents produced it in evidence
and rested ; whereupon contestants moved for a decree of revocation,
on the ground that only part of the will had been admitted to probate.—

*Held,* that the case was to be distinguished from one where several differ-
ing testamentary instruments, taken together, constitute one will, and
that the motion must be denied.

A failure to allege, in a petition for the probate of a will so executed, the
fact of duplicate execution could, at the most, be regarded only as an
irregularity, and would not affect " the validity of the will, or the
competency of the proof thereof," so as to justify a revocation of
probate under Code Civ. Pro., § 2647.

Where a party applies to a Surrogate's court, under Code Civ. Pro.,
§ 2481, subd. 6, " to open, vacate, modify or set aside " a decree or

order thereof, upon the ground of newly discovered evidence, such evidence must be considered in connection with that adduced on the trial, and a determination had whether it is such as would probably change the result. Special reasons should exist for granting the relief asked for where the application is one, made after the expiration of a year from the date of recording it, to vacate a decree admitting a will to probate,—a special proceeding to revoke which is expressly provided by statute, and limited to one year from such date (Code Civ. Pro., § 2648).

Of two instruments purporting to be duplicates of a last will, it appeared that, in one, in the clause appointing executors, the words "and my son Henry C. Crossman," also occurring in the other, were interlined, and the interlineation was noted at the foot of the will, opposite to the testator's signature, as having been made before execution.—

*Held,* that this constituted no material difference between the instruments, such as to require *both* to be admitted to probate, as together composing the last will of the testator.

Under Code Civ. Pro., § 2614, requiring the proponent of a will to present to the Surrogate's court a written petition "describing the will," it does not render the decree of probate a nullity to omit to state in the petition, where such is the fact, that the will was executed in duplicate. So *held,* where the words "done in duplicate" were plainly endorsed upon the document propounded.

HENRY CROSSMAN died January 7th, 1881, leaving a will executed in duplicate November 29th, 1879, which was admitted to probate January 28th, 1881, and letters testamentary were issued thereunder to Henry C. Crossman and others. The instrument produced and recorded was endorsed: "Last will and testament of Henry Crossman. Done in duplicate." On January 13th, 1882, a petition was filed by William H. Crossman, a nephew of decedent, and others, praying for revocation of the probate. Further facts are stated in the opinion of Surrogate Livingston, which was filed November 15th, 1882.

HENRY L. CLINTON and NATH. H. CLEMENTS, *for petitioners.*

HENRY W. BOOKSTAVER and JAMES R. STEERS, JR., *for executors.*

WM. B. PUTNEY and JOSIAH T. MAREAN, *for contestants.*

LIVINGSTON, Surr.—This is an application, under §§ 2647–2653 of the Code, to revoke the probate of the will of Henry Crossman, deceased.

The will was executed in duplicate, but only one of the duplicate parts was produced and proved on the probate, and no mention was then made of the other part, nor did it then appear that the will had been executed in duplicate. That fact was first made apparent on this proceeding by the testimony of Mr. Zener, one of the subscribing witnesses, and the duplicate part of the will not produced on the probate was admitted in evidence in this proceeding for the purpose of showing that it was in every respect an exact duplicate of the will admitted to probate and had not been in any way altered since its execution.

The proponents having rested their case, a motion is now made for a decree revoking the probate of said will, on the ground that only part of it was admitted to probate.

No question arises as to the destruction, alteration, or revocation of the duplicate part not produced on the original probate ; it is not pretended that it is not now in the same condition, in every respect, as the other part which was produced on that occasion ; the contention is that a will executed in duplicate consists of both duplicate parts, that neither constitutes the whole will, and that, consequently such a will has not been admitted to probate if only one of its duplicate parts has been proved.

This would no doubt be so if the several instruments, instead of being duplicates, contained different provisions. It is undoubtedly the general rule that two or

more testamentary instruments, executed at the same time by the same testator, are to be construed together and viewed as one will, and must be admitted to probate as such (Matter of Forman's Will, *54 Barb.*, *274*, *284*, *285*). But where a will is executed in duplicate, although each duplicate may be said to be part of the will, in the sense that it is not a separate will, yet from the very nature of duplicates each is the complete will in itself, since each part is a duplicate *original* (The Touchstone, *1st Am. ed.*, *53*, *note 1;* 2 Phillipps on Ev., *544*). As was said by Judge MAULE, in Doe v. Strickland (*8 Com. Bench*, *724*), "each part fully and entirely expresses the *will* and intention of the testator." And it is upon this theory that the revocation or intentional and final alteration of one of the parts by the testator is held to be a revocation or alteration of the whole will.

So considered, it would be unnecessary to admit to probate and record both duplicates. And this view is sustained by the practice followed in the Surrogate's court of New York, on the probate of the will of Ann Seaman, and in this court, in the case of the will of Austin D. Moore. Both of those wills were executed in duplicate, but only one part was admitted to probate and recorded. So in Doe v. Strickland (*supra*), only the altered duplicate part found in the possession of the testator was proved and admitted to probate, and yet, if the theory of counsel for the petitioners is correct, there is the same necessity for admitting to probate and recording both duplicates where one of them has been altered as where no alteration has been made in either, since the change in the one does not

destroy or annul the other, but only effects the same alteration in both.

Still, on the probate of a will executed in duplicate, the petition should describe the will as having been so executed, so as to inform the parties in interest of that fact, which it is very material for them to know ; and the part kept by the testator must be produced or accounted for, as, in case it cannot be found, the presumption is that he has destroyed it with the intention of revoking his will (1 W'ms on Executors, *158*) ; but, as said before, no such question arises in this case, as it appears that both duplicate parts were in the possession of the testator, and that neither was destroyed or altered by him.

The petition for the probate of the will probably was irregular in not properly describing the will as having been executed in duplicate ; but the probate is not to be revoked, in this proceeding, for that reason. The irregularity does not affect the validity of the will, or the competency of the proof thereof (Code, § *2647*).

The motion to revoke the probate must be denied, on the evidence as it now stands, and the proceeding may be entered on the day calendar for contested matters, for further hearing, on the application of either side, on eight days' notice to the other.

Let an order be entered accordingly.

On December 27th, 1882, an entry was made, in the minutes of the court, of contestants' motion to set aside the probate, the denial thereof, and contestants' exception, and an order was subsequently entered accordingly.

On February 8th, 1883, contestants moved for leave to file supplemental allegations against the validity of the will and the competency of the proof thereof, which motion was denied, "upon the ground that the questions raised by the proposed allegations in respect to the alleged duplicate will, are raised under the allegations already filed," and an order to that effect entered February 26th, 1883. On the same day, the parties again appeared before the Surrogate, by their respective counsel, and had a further hearing upon contestants' allegations against the validity of the will.

On March 16th, 1883, was entered, by direction of Surrogate BERGEN, a decree refusing to revoke the probate, and dismissing contestants' allegations.* Mean-

---

*From this decree an appeal was taken, March 24th, 1883, to the Supreme court, where the same was affirmed, the following opinion being filed in September, 1883:

BARNARD, P. J. — There is no reason why the decree of the Surrogate should be reversed. Henry Crossman executed his last will and testament in duplicate. The petition for the probate of the will did not mention that there were two duplicates, but it was plainly written on the back of the will that it was done in duplicate. It is undoubtedly true that when a will is done in duplicate the revocation of either revokes the will as expressed in each duplicate, because the will is single and the evidence of it double. The time for the production of the duplicate will was at its probate. It was then the contestants' right, and it was the duty of those then opposing probate to demand it. The will was proven without such demand. The present contestants have filed allegations against the will, its validity, its proof of execution and the mental capacity of the testator. Upon the re-examination of the witnesses to prove the will, the fact appears that it was executed in duplicate, and this duplicate copy is produced. It was never revoked so far as disclosed by the paper. It is as it was executed. We think that the petitioner was not required to state that the will was executed in duplicate or that both duplicates should be proposed for probate. The duplicates were not designed to be and were not in fact two wills, but each was executed so as to furnish a safeguard against loss. It now appears that there was no revocation of either paper. They are

while, in January, 1883, George W. Crossman, one of the petitioners in the foregoing application heard before Surrogate LIVINGSTON, applied to the court, under Code Civ. Pro., § 2481, subd. 6, to vacate and set aside the original probate decree, upon the grounds indicated in the following opinion, which was delivered January 25th, 1883:

BERGEN, Surr.—This is an application on behalf of George W. Crossman, one of the next of kin of the decedent, to set aside and vacate the decree made by the Surrogate January 28th, 1881, admitting the last will and testament of Henry Crossman, deceased, to probate, and to revoke the letters testamentary thereupon issued, and is made pursuant to subdivision 6 of

exactly similar. The omission of the name of one executor and its interlineation in one of the duplicates, accompanied by its annotation in the presence of the witnesses, in legal effect made both papers identical. No just purpose is subserved by holding such a paper other than a literal reproduction of the other. It was an evident mistake of the copyist, and to avoid an entire new copy the interlineation was resorted to and it was noted in the attestation clause.

Both papers express the name of the testator to be Henry C. Crossman in the attestation clause. The testator's name was simply Henry Crossman. There was an adopted son whose name was Henry C. Crossman. The will is proven to have been executed by Henry Crossman, and he is correctly named in the will. The insertion of the middle letter C., in the attestation clause, is not vital.

If there was no attestation clause and the will was properly proven it would be a good will. This will was properly executed and by the right testator. The mistake of the person who transcribed the attestation clause should not have the effect to destroy the will.

The decree of the Surrogate should be affirmed with costs.

Pratt and Dykman, J. J., concurred.

The determination of the Supreme court was affirmed by the Court of Appeals, the following opinion being handed down in April, 1884:

EARL, J.—Henry Crossman, the testator, died in January, 1881,

§ 2481 of the Code of Civil Procedure. The grounds upon which this motion is made, are :

*First.*—That only a part of the will was admitted to probate on that day.;

*Second.*—That (the will being in duplicate) both duplicates should have been presented for probate, and adjudicated upon at that time ; and,

*Third.*—That the duplicate parts are not identical.

The first question which presents itself, and was strenuously insisted upon by the learned counsel for the motion, is that the Surrogate, in admitting the will to probate January 28th, 1881, acted without jurisdiction, from the fact that it did not appear in the verified petition presented to him that the will was described as

---

leaving a will executed in duplicate. The duplicates were executed at the same time, with the same subscribing witnesses, and contained the same provisions and the same language. One of the duplicates was produced before the Surrogate in November, 1879, (January, 1881,) and was duly proved and admitted to probate.

Within a year thereafter several of the heirs and next of kin of the testator filed allegations against the validity of the will, the competency of its proof and the mental capacity of the testator, under the provisions of the Code of Civil Procedure (§§ 2647 to 2653). On the trial of these allegations before the Surrogate, the proponents produced their testimony in support of the will and rested. Among their proofs was the duplicate copy of the will executed by the testator, which they offered in evidence for the purpose of showing that it was identical with the will proved, and that there had been no revocation of the will, but not for the purpose of having it admitted to probate as a will. The counsel for the contestants objected to the proof on the ground that the alleged duplicate was not admissible in evidence for the purposes specified, or for either of them, and also upon the ground that it was inadmissible in evidence for any purpose whatever. The Surrogate admitted the will in evidence for the limited purpose for which it was offered, but not, as he stated, "with the idea that it can be admitted to probate in this proceeding, that question being reserved for future consideration, if it be raised." The counsel for proponents offered to file with the court the duplicate will, and the counsel for the contestants objected, and the duplicate was thereupon

having been executed in duplicate, and thereby misled the parties cited to appear at the probate thereof. Let us first see what the Statute requires, and then refer to the proceedings to ascertain if it was complied with. Section 2614 of the Code of Civil Procedure provides as follows: "A person designated in a will as executor, devisee or legatee, or any other person interested in the estate, or a creditor of a decedent, may present to the Surrogate's court, having jurisdiction, a written petition duly verified, describing the will, setting forth the facts upon which the jurisdiction of the court to grant probate thereof depends, and praying that the will may be proved, and the persons specified in the next section may be cited to attend the probate thereof."

put in evidence. After the proponents had rested their case, the contestants moved that the probate of the will be revoked, on the ground "that it appeared in evidence before the Surrogate that at the time the paper admitted to probate as the will of the said Henry Crossman, deceased, was executed, another paper, claimed to be a testamentary instrument, was executed by him at one and the same time ; that the said two testamentary papers were signed by the alleged testator at one and the same time, there having been no separate execution of either of said alleged testamentary papers, and that only a part of the alleged last will and testament of Henry Crossman, deceased, had been admitted to probate." The motion was denied by the Surrogate, and, after hearing all the evidence offered by the parties, he made a decree dismissing the allegations of the contestants and affirming the original probate. The contestants appealed from his decree to the general term of the Supreme court, where it was affirmed, and they then appealed to this court, and here rely upon several allegations of error, which will be noticed.

The contestants claim that, as these duplicates were executed at the same time by the testator as his last will and testament, it was necessary for the proponents to offer both for probate at the same time, and to have an adjudication by the Surrogate upon both. It is undoubtedly true that where two testamentary papers are executed at the same time, with the formalities required by law, they must be taken together to constitute the will of the testator. If the two papers contain different provisions, the one making bequests or devises not contained in the other, then both

By referring to the proceedings on file, I find that Henry C. Crossman, the executor named in the will of Henry Crossman, deceased, presented a verified petition on the 17th day of January, 1881, which contains the following description of the will: "Said last will and testament relates to both real and personal estate, and bears date the 29th day of November, 1879, and was signed by Richard H. Bowne and George W. Zener as witnesses;" that thereupon the Surrogate issued citations to all the parties in interest, returnable January 28th, 1881; and that, on the return day, George W. Crossman, the person who makes this motion, appeared by counsel, who filed his written appearance, in which he demanded the right to examine the witnesses who may be adduced to prove the will.

---

must be proved and admitted to probate, and both constitute, when read together, the will of the testator, as if all the provisions of both were contained in one instrument (Matter of Forman's Will, *54 Barb.*, *274*). This is only a branch of the general rule applicable to all written instruments, relating to the same transaction, executed at the same time, for the purpose of expressing the intention of the parties in reference thereto. All the instruments in such cases set forth the transaction and embody the intention of the parties, and they must always be read together. But where an agreement is reduced to writing in duplicates, each being exactly like the other, then there can be no reason to require a party, in proving such an instrument, to produce both. It is very common to execute leases and other instruments in duplicates, each party having one, and where they are precisely alike either party can come into court and produce the duplicate which he has and prove it, and he need not prove or cause the production of the other. So if the same party has duplicate instruments, executed for his own benefit and safety, each duplicate expresses the entire agreement of the parties, and either may be proved without the other. The same rule must be applicable to wills; where the duplicates are exactly alike, each expresses and contains the will of the testator, and either may be proved and admitted to probate without the other. There can be no conceivable reason for proving both or for having both admitted to probate, and no authority in this country or England has been found which holds that, in such a case, it is necessary that both should be proved

The will was plainly endorsed: "Last will of Henry Crossman, done in duplicate." It is now contended that, inasmuch as the will was not described in the petition as having been executed in duplicate, the probate thereof was a nullity. To that proposition, I cannot accede. From all that appears by the record, the will was fully described, and all the facts necessary to give the court jurisdiction were alleged in the petition; there was nothing concealed, for it appears that the will probated was endorsed "done in duplicate" so plainly that any person examining the will could not avoid noticing it. While it is true that the endorsement on the will is no part of it, still it goes far to show that the proponents did not attempt to conceal the fact that

---

or admitted to probate. The proponents of either duplicate can undoubtedly be required to produce the other so that both may be before the court for inspection, that it may be seen whether they are precisely alike or whether there has been any revocation. But when it appears that they are alike, and that there has been no revocation, then it would be quite an idle ceremony to prove both or to admit both to probate. Numerous cases were cited by the learned counsel for the contestants, holding that where a will is executed in duplicates a revocation of one according to law, *animo revocandi*, is a revocation of both. As each contains the will of the testator, a revocation of either is a revocation of his will, and thus revokes both. The following are some of the authorities cited : 1 Williams on Executors, *154;* 1 Redfield on Wills, *305;* 2 Greenleaf Ev., § *682;* 1 Jarman on Wills, *296, 297;* Hubbard v. Alexander (*3 Ch. Div., L. R., 738*); Doe v. Strickland (*8 Com. Bench, 724*); Farr v. O'Neall (*1 Richardson [Law], 80*). None of the cases give any countenance to the idea that both duplicates must be admitted to probate. It does not take the two duplicates to express the will of the testator, but his will entire is found in each. In this case, before the Surrogate, all was done which is required by any rule of law, or even of prudence. The duplicate not probated was produced, proved and filed with the Surrogate. In Odenwaelder v. Schorr (*8 Mo. App. R., 458*), where a will was executed in duplicates at the same time, just as this was, it was held that both were the same will, not that it took both papers to make the will of the testator, and that it was immaterial which was proved. The judge, writing

the will was executed in duplicate.   Had the contestant examined the will, or the subscribing witnesses on the probate, as he demanded in his written appearance the right to do, he certainly would have discovered that it was executed in duplicate.

It was not contended by the applicant on this motion that the will of Henry Crossman was not properly executed, or that he was not a resident of this county; but, on the contrary, it appears that the will was properly executed, and the testator was a resident of this county, and that George W. Crossman, if he was not personally present in court when the will was probated, had filed his written appearance and was represented by counsel; yet he made no objection to the probate. So far as he was concerned, the court acquired jurisdiction (see Allen v. Malcolm, *12 Abb. N. S.*, *335*; Morrell v. Dennison, *8 Abb. Pr.*, *401*).

Having disposed of the question of jurisdiction in

the opinion, said : "Both papers, if executed at all, were executed at the same time, with the same intention, and are word for word the same. It is, therefore, immaterial which is proved.  They are the same, and each of them, if a will at all, is the last will of the deceased."

The objection at this stage of the case, that both wills were not admitted to probate, is quite technical, as the contestants upon the trial before the Surrogate, where the duplicate was produced, strenuously objected to its reception in evidence for any purpose whatever.  If they had desired to have it admitted to probate with the other duplicate, or to have had the Surrogate adjudicate upon it with the other duplicate, he would doubtless have done so, and was prevented from doing so mainly, if not exclusively, upon their objection.

But it is also strenuously objected that section 2614 of the Code was not complied with in the petition presented to the Surrogate for probate of the will.   That section provides that the proponents may present to the Surrogate having jurisdiction, a written petition duly verified "describing the will," setting forth the facts upon which the jurisdiction of the court to grant probate thereof depends, and praying that the will may be proved, and that the persons specified may be cited to attend the

the original proceedings, I am now asked, upon newly discovered evidence, to vacate the decree made, admitting the will to probate, January 28th, 1881. The motion papers are all based upon the evidence of George W. Zener, one of the subscribing witnesses to the will in another motion pending in this court for the same purpose made under § 2648 of the Code of Civil Procedure. In that proceeding, allegations were filed against the validity of the will within one year after the recording of the decree admitting the will to probate, and the trial upon those allegations was commenced before my predecessor, on the second day of June last, and is still continued in this court.

Upon the examination before Judge LIVINGSTON, it was developed in the testimony of George W. Zener, one of the subscribing witnesses to the will, that the will had been executed in duplicate. Upon that fact appearing, a motion was made by the applicant in this

probate thereof. The objection made is that the Surrogate did not obtain jurisdiction to prove this will, because the petition failed to describe it. In the petition it is stated that the last will and testament related to both real and personal estate, bore date the 29th day of November, 1879, and was signed by the witnesses, naming them ; and one of the executors was also named. That was certainly a description of the will sufficient to give the Surrogate jurisdiction. Whether it should have been fuller or more particular, was undoubtedly for him to determine. He could have required, when the petition was filed with him, that it should be made more certain and definite in reference to the will. He might have required the petition to state whether there was or was not a duplicate, and other facts pertaining to the will. The claim of the contestants is, that the petition should have described the will as executed in duplicate ; but that was not essential. There was but one will, whether it existed in one or two papers, or more, and that will was executed at one date ; there were two witnesses to it, and it related to real and personal estate. It was the precise will described, and whether it was expressed in one or many papers it was unnecessary to mention in the petition. That was ample as a basis for the proceedings taken in the Surrogate's court. As soon as

motion and his co-contestants to revoke the will admitted to probate, upon the ground that only a part of the alleged last will and testament of Henry Crossman, deceased, had been admitted to probate on the 28th of January, 1881 ; and that both duplicates should have been presented for probate and adjudicated upon. That motion was argued at length by counsel on both sides, and a decision was made by Judge Livingston denying the motion, in which he says : "But where a will is executed in duplicate, although each duplicate may be said to be part of the will, in the sense that it is not a separate will, yet from the very nature of duplicates each is the complete will in itself, since each part is a duplicate original ; each part fully and entirely expresses the will and intention of the testator." In my opinion, this is a correct and clear statement of the law; but the counsel contends that this motion is based upon a further and additional fact not presented on the former motion, viz : that the duplicate is not in all respects similar to and identical with the will admitted

it is brought to the attention of the Surrogate that there are duplicates of a will presented to him for probate, it is proper that he should require both duplicates to be presented, but not for the purpose of admitting both as separate instruments to probate, but that he may be assured whether the will has been revoked, and whether each completely contains the will of the testator.

In the duplicate will there was an interlineation of the name of one of the executors which had apparently been left out in copying, and the interlineation was noted at the bottom of the will before the attestation clause ; and it was there said that the interlineation was made before the execution. The interlineation was necessary to make the two duplicates precisely alike. The claim on the part of the contestants is that the law presumes that this interlineation was made after execution, and hence that without any explanatory evidence it would have to be held that these were not duplicates ; that while the duplicate admitted to probate contains three executors, the one not admitted to probate contains but two. But

to probate, but that it contains one or more important interlineations and erasures. I have carefully examined the will and duplicate, but did not discover any important interlineations or erasures, except that, on the eighth page in the clause appointing his executors, the words, "*and my son Henry C. Crossman*," were interlined, which interlineation is noted at the foot of the will, directly opposite the testator's signature, and immediately above the attestation clause, as having been interlined before execution. Both the will and duplicate are entirely in the handwriting of George W. Zener, one of the subscribing witnesses, including the above interlineation, and note of it, with the exception of the signature of the testator and the signature and address of Richard H. Bowne, the other subscribing witness. I can, therefore, see no material difference between the duplicates, which would lead me to revoke the probate on this ground.

In the Forman will case, reported in 54 Barb., 274, cited by the learned counsel for the motion, there were

we do not so understand the law in this State. Where an interlineation fair upon the face of an instrument is entirely unexplained, we do not understand that there is any presumption that it was fraudulently made after the execution of the instrument. But here the interlineation was noted at the bottom of the instrument before the attestation clause ; and so, too, the interlineation was necessary to make it a duplicate which it was evidently intended to be, as the papers were marked on the back "done in duplicate." Taking all these circumstances, there was sufficient to cast the burden upon the contestants to show that the interlineation was fraudulent and unauthorized. In 1 Greenleaf (section 564), it is said : "If the alteration is noted in the attestation clause as having been made before the execution of the instrument, it is sufficiently accounted for, and the instrument is relieved from that suspicion ; and if it appears in the same handwriting and ink with the body of the instrument, it may suffice ;" and again, "generally speaking, if nothing appears to the contrary, the alteration will be presumed to be contemporaneous with the

two wills executed at the same time, which contained provisions so repugnant to each other that the Surrogate declined to say which was the last will, and therefore admitted both to probate, requiring them both to be construed together; but no such difference exists in the case at bar as to require both to be probated, to enable the court to construe them, for there is nothing in the one which is not in the other, except the note of interlineation at the foot of the will. The doctrine laid down in the English cases cited, viz: that the cancellation of one of the duplicates by the testator is a revocation of the other, is undoubtedly correct, but in none of them do I find that, if both duplicates had been in existence unrevoked, it would have been necessary to offer both for probate; it was simply whether the cancellation of the one worked a revocation of the other.

In the case of Killican v. Lord Parker, reported in 1 Lee Ecc. R., 662, the court granted an inspection of the duplicate upon the demand of the contestant, and directed it to be left with the court, but it was not re-

---

execution of the instrument." In Speake v. United States (*9 Cranch, 37*), STORY, J., says: "The fact that there is an erasure or interlineation apparent on the face of the deed does not, of itself, avoid it. To produce this effect, it must be shown to have been made under circumstances that the law does not warrant." In Bailey v. Taylor (*11 Conn., 531*), it was held "that where there is an erasure or alteration in an instrument under which a party derives his title, and the adverse party claims that such erasure or alteration was improperly made, the jury are, from all the circumstances before them, to determine whether the instrument is thereby rendered invalid."

Here, from all the circumstances, it was at least for the Surrogate to determine whether this interlineation was made before or after execution, and in making that determination he was bound to consider the hand-

quired to be probated. Had the question been raised
on the original probate of this will, the Surrogate
might, upon the demand of the contestants, as in the
case last cited, have granted an inspection of the dup-
licate not probated, for the purpose of showing that
the duplicates were identical and had not been altered.

I shall assume in this case that the Surrogate has the
power to open, vacate and annul a decree, as provided
in subdivision 6 of § 2481 of the Code, upon sufficient
grounds being shown therefor, but upon the ground of
newly discovered evidence such new evidence must be
considered in connection with the evidence adduced on
the trial, whether it is such as would probably change
the result.

In the matter of the accounting of William Dey Er-
mand, Ex'r, reported in 12 N. Y. Weekly Digest,
90, it was held by the General Term of the 3rd Depart-
ment that the Surrogate had power under § 2481 of the
Code to open a decree to correct a palpable mistake ;
but that he did not have the power to vacate and set
aside a decree to enable the question to be litigated and

---

writing, the color of the ink, the manner of the interlineation, the fact
that it was noted at the bottom of the instrument, and that it was made
to correspond with the other duplicate. Where an interlineation or erasure
in a will is fair upon its face and it is entirely unexplained, there being no
circumstance whatever to cast suspicion upon it, it would not be proper
for any court to hold that the alteration was made after execution, but if
there are any suspicious or doubtful circumstances growing out of the
mode of the alteration, the ink in which it was made, the fact that it was
in favor of the party holding the instrument, and that it is not noted at
the bottom, then these and all the other circumstances must be submitted
as questions of fact to be determined by the court in deciding whether the
alterations were made before execution or not. There was at least enough,
if any evidence under the circumstances was required, to call for the

determined whether there has been a mistake made in the provisions of a decree entered. And in a still more recent case—upon the application of Margarite Becker to revoke the probate of the will of Henry Sittig, reported in 15 N. Y. Weekly Digest, 446, the General Term of the 1st Department held "that strong and controlling reasons should be presented to the court for extending the time within which such applications should be made beyond the one year fixed by statute."

After a careful examination of the whole case, I am satisfied that the newly discovered evidence is not such as to warrant me in vacating the decree admitting the will to probate, and for the further reason that there is another proceeding now pending before the Surrogate's court, under § 2648 of the Code, to revoke the probate of the will of Henry Crossman, where the main question on this motion has been fairly and pointedly raised, and all the rights of the applicant herein can be fully protected in that proceeding.

The motion to revoke the probate must be denied, with costs.  Let an order be entered accordingly.

judgment of the Surrogate, and his decision must be final.

The subscribing witnesses to these duplicates testified to all the facts necessary to their admission to probate, and whether there was anything in their evidence or their appearance to shake their credibility or cast a doubt upon their evidence, was for the Surrogate to determine. We cannot, therefore, review his decision upon the evidence. His finding thereon concludes us.

We have now noticed the most material allegations of error made by the contestants against the judgment appealed from, and are of opinion that none of them are well founded, and that it should be affirmed, with costs.

All concur.